1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| KENNETH M. MARSH, | CASE NO. 05CV1568 WQH (NLS) |
| Plaintiff, | ORDER RE: PRECLUSIVE EFFECT OF PLAINTIFF'S CALIFORNIA VICTIM'S COMPENSATION AND GOVERNMENT CLAIMS BOARD PROCEEDINGS |
| vs. | |
| COUNTY OF SAN DIEGO, M.L. MURPHY, M.D., DAVID L. CHADWICK, M.D., ROGER WILLIAMS, M.D., CHILDREN'S HOSPITAL MEDICAL CENTER and DOES 1 to 100, Inclusive, | |
| Defendants. | |

12
13
14
15
16
17
18
19

HAYES, Judge:

20        Pending before the Court is Plaintiff Kenneth M. Marsh's motion for summary judgment, or

21 in the alternative, motion for summary adjudication.  (Doc. # 58).  The Court heard oral argument

22 regarding the motion on Monday, November 13, 2006.

23                                **PROCEDURAL HISTORY**

24        On August 9, 2005, Plaintiff filed his Complaint in the present case, alleging a conspiracy to

25 deprive him of his civil rights.  (Doc. # 1).  Plaintiff asserted seven causes of action, including federal

26 civil rights, malicious prosecution, and *Monell* claims under 42 U.S.C. § 1983, as well as California

27 state law claims for false imprisonment, intentional infliction of emotional distress, statutory civil

28 rights violations, and malicious prosecution against Defendants County of San Diego, Children's

1    Hospital Medical Center, Dr. M.L. Murphy, Dr. David Chadwick, and Dr. Roger Williams
2    (collectively, Defendants).  On November 16, 2005, Defendants moved to dismiss the Complaint.
3    (Doc. # 5).  On May 5, 2006, the Court granted Defendants' motion to dismiss in part, and denied the
4    motion in part.  (Doc. # 45).  The Court dismissed Plaintiff's § 1983 Fourteenth Amendment claim
5    and his state claims for false imprisonment and statutory civil rights violations.  (Doc. # 45).  The
6    Court did not dismiss Plaintiff's § 1983 Fourth Amendment, malicious prosecution, and *Monell*
7    claims, and further did not dismiss Plaintiff's state law claims for intentional infliction of emotional
8    distress, malicious prosecution, and claims under Cal. Civ. Code §§ 43 and 45.  (Doc. # 45).

9        Defendants answered the Complaint in May, 2006.  (Docs. # 47, 49).  Each Defendant asserted
10   various affirmative defenses, including that Plaintiff was responsible for the damages he suffered
11   because Plaintiff caused the death of Phillip Buell.  On September 26, 2006, Plaintiff moved for
12   summary judgment.  (Doc. # 58).

13                          **FACTUAL BACKGROUND**

14       On April 27, 1983, two-year old Phillip Buell died after sustaining injuries while in the care
15   of Plaintiff Kenneth M. Marsh (Plaintiff).  *Plaintiff's Motion for Summary Judgment,* Ex. 4 at 23.  The
16   State of California charged Plaintiff with second-degree murder, and the case went to trial.
17   *Children's Hospital and Dr. Chadwick's Opposition to Plaintiff's Motion for Summary Judgment,* Ex.
18   1 at 8.  At the trial, Dr. Chadwick and other physicians testified that Phillip Buell died as a result of
19   non-accidental injury, and on November 28, 1983, a unanimous jury convicted Plaintiff of second-
20   degree murder for Phillip Buell's death. *Declaration of Dr. David Chadwick*, ¶ 2; *Children's Hospital*
21   *and Dr. Chadwick's Opposition to Plaintiff's Motion for Summary Judgment,* Ex. 1 at 8.

22       Plaintiff appealed his conviction, but did not prevail.  *Plaintiff's Mot. Summ. J.,* Ex. 3.  On
23   appeal, the California Court of Appeal held that Plaintiff's conviction was "overwhelmingly
24   supported" by the evidence, and noted that "medical experts unanimously ruled out accidental death."
25   Plaintiff petitioned for writ of habeas corpus, but the petition was denied.

26       Plaintiff petitioned for writ of habeas corpus a second time in 2003.  After the filing of the
27   second Petition, the San Diego District Attorney sought the expert opinion of Dr. Samuel P. Guilino
28   regarding the cause of Phillip Buell's death.  Though Dr. Guilino was "concerned that the head injury

1   which caused the death of Phillip Buell may have been the result of inflicted trauma," he was

2   ultimately "unable to conclude beyond a reasonable doubt or to a reasonable degree of medical

3   certainty, that [Buell] was a victim of child abuse." *Marsh's Request for Judicial Notice*, Ex. 20 at

4   14.  In light of that opinion and the entirety of the record, the San Diego District Attorney asked the

5   San Diego Superior Court to grant Plaintiff's writ of habeas corpus. *Plaintiff's Mot. Summ. J.*, Ex.

6   21.  On August 10, 2004, the San Diego Superior Court granted Plaintiff's writ of habeas corpus and

7   set aside Plaintiff's conviction. *Children's Hospital's Opp'n*, Ex. 3.  On September 3, 2004, the

8   District Attorney moved to dismiss the case against Plaintiff on the grounds that reasonable doubt

9   existed, even though the State denied that Plaintiff was "factually innocent." *Children's Hospital's*

10  *Opp'n*, Ex. 2. *Children's Hospital's Opp'n*, Ex. 2.  The San Diego Superior Court granted the motion

11  to dismiss.  Prior to his release, Plaintiff had been incarcerated for close to twenty-one years.

12          After the Superior Court dismissed the charges against him, Plaintiff filed a claim for damages

13  with the California Victim's Compensation and Government Claims Board (Claims Board) pursuant

14  to California Penal Code § 4900.  *Plaintiff's Mot. Summ. J.*, Exs. 22-25.  In December, 2005, the

15  Claims Board held a hearing to determine whether Plaintiff was entitled to monetary compensation

16  for wrongful incarceration. *Plaintiff's Mot. Summ. J.*, Ex. 23.  At the hearing, Deputy State Attorney

17  General James Dutton (Dutton) represented the interests of the State of California.

18          At the commencement of the Claims Board hearing, Dutton represented the State of

19  California's role as follows:

20          MR. DUTTON: Jim Dutton, Your Honor, from the Attorney General's Office in *an*
            *advisory capacity* having to do with Penal Code Section 4900 et seq.
21

22  *Children's Hospital's Opp'n*, Ex. 4 at 21 (Emphasis added.).  Plaintiff's attorney Donnie Cox (Cox)

23  also noted that,

            [B]oth [Hearing Officer Hedum] and Mr. Dutton indicated that [Hearing Officer
24          Hedum] considered this to be a fact finding procedure, more than an adversarial
            procedure, and I think Mr. Dutton agreed with us on that.
25

26  *Children's Hospital's Opp'n*, Ex. 4 at 22.  The State did not call witnesses during the Claims Board

27  hearing, and noted the point on the record–"As you are aware, we will not be calling any witnesses,

    we'll just be respondent and cross-examining when appropriate some of the witnesses for the
28
    claimant."  *Children's Hospital's Opp'n*, Ex. 4 at 10, 23.  The State also failed to object to

questionable evidence introduced by Marsh, such as Plaintiff's witness Ted Armijo testifying that he believed Marsh's version of the events.  Finally, the State did not oppose Plaintiff's version concerning Phillip Buell's cause of death, did not oppose Plaintiff's proposed legal conclusions, and ultimately admitted that Plaintiff established his innocence by a preponderance of the evidence. *Declaration of Colin H. Murray*, ¶¶ 13-16, *Children's Hospital's Opp'n*, Ex. 7 at 77.

Defendants, with the possible exception of the County of San Diego, were not given notice of Plaintiff's Claims Board proceedings.  *McCarthy Decl.*, ¶ 7; *Murray Decl.*, ¶¶ 3-5; *Declaration of David L. Chadwick*, ¶¶ 5-6.  Nor were Defendants in the present case actual parties in Plaintiff's Claims Board proceedings.  *Declaration of Deborah A. McCarthy*, ¶ 6; *Murray Decl.*, ¶¶ 3-4.  In fact, none of the Defendants in the present case was given the opportunity to appear or participate in Plaintiff's Claims Board proceedings.  *McCarthy Decl.*, ¶¶ 6, 8; *Murray Decl.*, ¶¶ 3-7.

On January 4, 2006, Claims Board Hearing Officer Kyle Hedum entered his preliminary findings and ruling with respect to Plaintiff's § 4900 claims in the form of a "Proposed Decision." *Plaintiff's Mot. Summ. J.*, Ex. 23.  Therein, Hedum ruled that:

> After careful evaluation of all of the evidence, and with the concurrence of the AG, it is determined that Marsh has proven by a preponderance of the evidence that he did not violate California Penal Code section 187 and that he did not, either intentionally or negligently, contribute to his arrest or conviction for that offense.  In addition, it is determined by a preponderance of the evidence that Marsh suffered pecuniary loss due to his erroneous conviction and subsequent imprisonment.

*Plaintiff's Mot. Summ. J.*, Ex. 23 at 11.  On January 19, 2006, the Claims Board adopted Hedum's proposed decision as its Decision.  *Plaintiff's Mot. Summ. J.*, Ex. 24.  On January 25, 2006, a bill was introduced in the State Senate which appropriated $756,000 to the Claims Board for payment to Plaintiff as compensation for his wrongful imprisonment.  *Plaintiff's Mot. Summ. J.*, Ex. 2.

## STANDARD OF REVIEW

Summary judgment and summary adjudication are appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Avalos v. Baca*, No. CV 05-07602 DDP (SHx), 2006 U.S. Dist. LEXIS 58342 (C.D. Cal. August 7, 2006).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252.  Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)) (internal quotations omitted).

In ruling on a motion for summary judgment, "[t]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587.  "Credibility determinations [and] the weighing of evidence . . . are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

## DISCUSSION

Plaintiff contends that he proved his innocence in the death of Phillip Buell by a preponderance of the evidence by prevailing under § 4900 in the Claims Board proceedings.  As a result, Plaintiff contends that he is entitled to summary adjudication on the issue of his innocence under the principles

1    of collateral estoppel (a.k.a.–issue preclusion).

2         Defendants highlight the relevance and importance of the issue of Plaintiff's culpability in the

3    death of Phillip Buell, and argue that one of their primary defenses against Plaintiff's federal and state

4    claims is that Plaintiff is culpable for the death of Phillip Buell, and that therefore, Defendants cannot

5    be liable for malicious prosecution and or conspiracy to wrongfully convict Plaintiff.  Defendants

6    contend that Plaintiff's Claims Board decision should not have preclusive effect in this case because

7    (a) the issue in the § 4900 proceedings was not identical to the issue here, (b) the issue of Plaintiff's

8    innocence was not "actually litigated" in the Claims Board proceedings, and (c) Defendants were not

9    parties and were not virtually represented in the Claims Board proceedings.

10   ***A.  Collateral Estoppel***

11        Collateral estoppel prevents relitigation of issues of fact or law that were litigated in a prior

12   proceeding.  *Robi v. The Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).  "In both offensive and

13   defensive use situations the party against whom estoppel [issue preclusion] is asserted has litigated

14   and lost in an earlier action."  *Id.*  "Collateral estoppel, like the related doctrine of res judicata, has the

15   dual purpose of protecting litigants from the burden of relitigating an identical issue with the same

16   party or his privy and of promoting judicial economy by preventing needless litigation."  *Parklane*

17   *Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

18        "Assuming a full and fair opportunity to litigate, . . . federal courts must accord preclusive

19   effect to state court judgments," as well as to state administrative proceedings.  *Marquez v. Guttierez*,

20   51 F. Supp. 2d 1020, 1026 (E.D. Cal. 1999); *see also* 28 U.S.C. § 1738.  State law governs the extent

21   and elements of collateral estoppel.  *Valley Wood Preserving, Inc. v. Paul*, 785 F.2d 751, 753 (9th Cir.

22   1986).  In order to apply collateral estoppel in California,

23        (1) the issue must be identical to that decided in the prior proceeding; (2) the issue
         must have been actually litigated in the prior proceeding; (3) the issue must have been
24       necessarily decided in the prior proceeding; (4) the decision must have been final and
         on the merits; and (5) preclusion must be sought against a person who was a party or
25       in privity with a party to the prior proceeding.

26   *Alvarez v. May Dep't Stores*, 143 Cal. App. 4th 1223, 1233 (2006).

27        "California gives preclusive effect to state administrative decisions pursuant to the guidance

28   of *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421-422 [1966]."  *Marquez*, 51

F. Supp. 2d at 1026; *see also People v. Sims*, 32 Cal. 3d 468, 479 (1982).  Accordingly, a California state administrative proceeding can have preclusive effect if "(1) the administrative agency acted in a judicial capacity; (2) the agency resolved disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to litigate."  *Marquez*, 51 F. Supp. 2d at 1026-27; *Sims*, 32 Cal. 3d at 479.

## 1. The Claims Board Proceedings

The first issue to be resolved by the Court is whether the decision of the California Victim's Compensation and Government Claims Board can be given preclusive effect.  In order to be given preclusive effect, Plaintiff's Claims Board proceedings must have been conducted in a judicial and adversarial manner, the hearing officer must have resolved disputed issues of fact properly before him, and the parties must have had an adequate opportunity to litigate.  *Marquez*, 51 F. Supp. 2d at 1026-27; *Imen v. Glassford*, 201 Cal. App. 3d 898, 906-07 (1988).

In *Diola v. State Bd. of Control*, 135 Cal. App. 3d 580, 586 (1982), the California Court of Appeal noted that § 4900 Claims Board proceedings are quasi-adjudicative, allow for the presentation of evidence and cross-examination, and are governed by rules.  *See also Cal. Penal Code §§ 4900 et seq*.  After reviewing the statutes which govern Claims Board proceedings, the Court concludes that a Claims Board proceeding is capable of functioning and operating in a judicial-like capacity.  The Court concludes, however, that a § 4900 Claims Board proceeding may in some instances operate in a non-judicial capacity.

In *Imen v. Glassford*, the California Court of Appeal identified a number of factors which can assist a district court in determining whether an administrative proceeding possesses the requisite judicial character to be afforded preclusive effect.  *Glassford*, 201 Cal. App. 3d at 907.  Among other things, the *Glassford* factors include whether the proceedings were adversarial, whether the proceedings included an impartial hearing officer, whether the parties had a right to subpoena witnesses, and whether a verbatim record of the proceedings was kept.  *Glassford*, 201 Cal. App. 3d at 907.  After evaluating the Claims Board proceedings which took place in this case, the Court notes that some of the *Glassford* factors support a finding that Plaintiff's Claims Board proceedings were of a judicial nature.  However, it is evident to the Court that the first *Glassford* factor–whether the

proceedings were adversarial–indicates a contrary and distinctly non-judicial character of the proceedings.

On at least two occasions at the beginning of Plaintiff's Claims Board proceedings, the parties expressly represented on the record that they did not view the proceedings as adversarial. In stating his appearance on the record, Deputy Attorney General Dutton stated that the State's role in the proceedings was not as Plaintiff's adversary, but as an advisor to the hearing officer:

> MR. DUTTON: Jim Dutton, Your Honor, from the Attorney General's Office in *an advisory capacity* having to do with Penal Code Section 4900 et seq.

*Children's Hospital's Opp'n*, Ex. 4 at 21 (Emphasis added.). Shortly thereafter, Plaintiff's attorney, Donnie Cox, confirmed the State's advisory role, and in fact represented that the entire proceeding was non-adversarial, stating,

> [B]oth [Hearing Officer Hedum] and Mr. Dutton indicated that [Hearing Officer Hedum] considered this to be a fact finding procedure, more than an adversarial procedure, and I think Mr. Dutton agreed with us on that.

*Children's Hospital's Opp'n,* Ex. 4 at 22. Viewed in the light most favorable to the Defendant (the non-moving party), the above statements indicate that the Claims Board proceedings were not adversarial. That the State never intended to and didn't call witnesses, failed to object to evidence, didn't oppose Plaintiff's version of Phillip Buell's death, and ultimately told the Claims Board hearing officer that Plaintiff had met his burden also supports that conclusion. Accordingly, the Court concludes that, viewed in the light most favorable to Defendant, the Claims Board proceedings lacked an adversarial nature.

Aside from the proceedings not being adversarial, Defendants contend that preclusion should not apply because they did not have an opportunity to litigate in the Claims Board proceedings, let alone an "adequate opportunity" as required by law. *Marquez*, 51 F. Supp. 2d at 1026-27; *Sims*, 32 Cal. 3d at 479. Plaintiff contends that Defendants had an adequate opportunity to litigate because they were virtually represented by the State during Plaintiff's Claims Board hearings.

"A non-party can be bound by the litigation choices made by his virtual representative." *Irwin v. Mascott*, 370 F.3d 934, 929 (9th Cir. 2004); *Alvarez*, 143 Cal. App. 4th 1223. In determining whether a party is the virtual representative of a party from a prior proceeding, courts note that, "close relationship, substantial participation, and tactical maneuvering all support a finding of virtual

representation," while "identity of interests and adequate representation are necessary to such a finding." *Id.* at 930.  In the State of California, "[t]he emphasis is not on a concept of identity of parties, but on the practical situation.  The question is whether the non-party is sufficiently close to afford the application of the principle of preclusion." *Id.*  "[T]he determination of privity depends upon the fairness of binding [the party] with the result obtained in earlier proceedings in which it did not participate." *Citizens for Open Access et. Tide, Inc. v. Seadrift Assn.*, 60 Cal. App. 4th 1053, 1070-71 (1998).

As the California Court of Appeal noted in *Glassford*, a defendant's incentive to defend is an important consideration in determining the propriety of giving preclusive effect to an administrative decision.  *Glassford*, 201 Cal. App. 3d at 906-07.  "If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable." *Id., citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979).  In comparing the Attorney General's incentives to defend in the Claims Board proceeding to the Defendants incentives to defend here, the differences are striking.  After the favorable decision from the Claims Board, Plaintiff received $756,000 in compensation from the State of California.  Here, on the other hand, Plaintiff seeks damages of approximately $50,000,000, including punitive damages.  Another difference between the Claims Board proceedings and this case is that it was the State who was liable in the Claims Board proceedings, whereas Drs. Chadwick, Williams, and Murphy are exposed in their individual capacities here.  While the State certainly had some incentive to protect its financial coffers in the Claims Board proceedings, that incentive dwarfs the incentive of the individual Defendants to protect their own bank accounts from colossal sums in this case.  Finally, the decision of the Claims Board was, by statute, only a recommendation to the State Legislature that it should appropriate money to Plaintiff.  *See* Cal. Penal Code § 4904.[1]  Accordingly, the State Legislature was not under

---

[1] **§ 4904.  Report of findings to legislature; recommendation; limitation on amount of recovery**

If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, and that the claimant did not, by any act or omission either intentionally or negligently, contribute to the bringing about of his or her arrest or conviction, and that the claimant has sustained pecuniary injury through his or her erroneous conviction and imprisonment, the State Board of Control shall report the facts of the case and its conclusions to the next Legislature of this state, with a recommendation that an appropriation be made

an absolute obligation to appropriate money after the Claims Board proceedings.  Here, on the other hand, a judgment in favor of Plaintiff would be a judicially enforceable requirement.  With those points in mind, the Court cannot conclude that the State's incentive to defend vigorously in the Claims Board proceeding is equivalent to Defendants incentive to defend here.  The Court concludes that an evaluation of the incentives to defend does not support giving preclusive effect to the decision of the Claims Board.

It is undisputed that none of the Defendants participated in Plaintiff's Claims Board proceedings.  It is also is evident that a majority, if not all, of the Defendants did not have notice that the Claims Board proceedings were taking place.  Finally, the record from the Claims Board proceedings establishes that Defendants' putative virtual representative at the Claims Board proceedings, the State of California, viewed its role as an advisor, and not as Plaintiff's adversary.  Viewing the facts in the light most favorable to the Defendants, the Court concludes that these facts do not support a finding of virtual representation because Defendants are not "sufficiently close" to the State of California to justify the "application of the principle of preclusion."  *Irwin*, 370 F.3d at 930.

The Court concludes that the Claims Board proceedings lacked a judicial-like adversarial tone, and further, that Defendants did not have an adequate opportunity to litigate in those proceedings because they neither knew about the proceedings nor were virtually represented by the State during the proceedings.  As a result of those conclusions, the Court concludes that Plaintiff's favorable Claims Board decision should not be given preclusive effect.

**2.  Collateral Estoppel Generally**

Though Plaintiff's motion for summary adjudication could be denied on the above grounds alone, the Court also notes that general principles of collateral estoppel also preclude the doctrine's application in this case.  As noted earlier, in order to apply collateral estoppel in California,

---

by the Legislature for the purpose of indemnifying the claimant for the pecuniary injury; but the amount of the appropriation recommended shall be a sum equivalent to one hundred dollars ($100) per day of incarceration served subsequent to the claimant's conviction and that appropriation shall not be treated as gross income to the recipient under the provisions of the Revenue and Taxation Code.

1    (1) the issue must be identical to that decided in the prior proceeding; (2) the issue
2    must have been actually litigated in the prior proceeding; (3) the issue must have been
     necessarily decided in the prior proceeding; (4) the decision must have been final and
     on the merits; and (5) preclusion must be sought against a person who was a party or
3    in privity with a party to the prior proceeding.

4    *Alvarez v. May Dep't Stores*, 143 Cal. App. 4th at 1233.  The general elements of collateral estoppel,

5    like the elements for giving preclusive effect to administrative decisions, include the requirements that

6    issues be "actually litigated," and that preclusion be sought against a person who was a party or in

7    privity with a party in the prior proceeding.  As noted above, viewed in the light most favorable to the

8    Defendants, the non-adversarial nature of the Claims Board proceedings precludes the conclusion that

9    the issue of Plaintiff's innocence was "actually litigated."  *Id*.  Furthermore, viewing the facts in the

10   light most favorable to the Defendants, the Court concludes that there was neither privity nor virtual

11   representation between Defendants and the State during the Claims Board proceedings.  For those

12   reasons, the Court concludes that, when viewed in the light most favorable to the Defendants, the facts

13   do not support the application of collateral estoppel in this case.

14                                    **CONCLUSION**

15        Plaintiff's motion for summary judgment, or in the alternative summary adjudication (Doc. #

16   58), is denied.

17        **IT IS SO ORDERED.**

18   DATED:  January 18, 2007

19
20
21                                              **WILLIAM Q. HAYES**
                                            United States District Judge
22
23
24
25
26
27
28